IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KATHLEEN LOGSDON,
PERSONAL REPRESENTATIVE
OF THE ESTATE OF TROY A.
KIRKPATRICK DECEASED,

    Plaintiff,

vs.                                                                     No. 15-cv-914-MCA-CG

SERGEANT EDWARD DUARTE,
OFFICER DAVID DESANTIAGO,
LIEUTENANT JESSIE RODRIGUEZ,
AND THE CITY OF CARLSBAD
POLICE DEPARTMENT,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Defendants' Motion to Dismiss and/or for Summary Judgment and for Qualified Immunity and Memorandum of Law in Support Therefor*[], filed on September 6, 2016 [Doc. 41]; and on *Defendants' Motion to Strike Exhibits Attached to Plaintiff's Response to Defendants' Motion for Summary Judgment and Memorandum of Law in Support Therefor*[], filed on December 2, 2016 [Doc. 52]

The Court has considered the parties' submissions, the record, the relevant law, and is otherwise fully advised. For the reasons discussed below, *Defendants' Motion to Dismiss and/or for Summary Judgment and for Qualified Immunity and Memorandum of Law in Support Therefor*[], is well taken and shall be granted. *Defendants' Motion to Strike Exhibits Attached to Plaintiff's Response to Defendants' Motion for Summary Judgment and Memorandum of Law in Support Therefor*[] shall be granted in part.

1

**BACKGROUND**

This is a wrongful death lawsuit filed by Kathleen Logsdon (Plaintiff), who is the personal representative of the Estate of Troy A. Kirkpatrick (Decedent). [Doc. 1 p. 1] At the time of his death, Decedent was a pretrial detainee at the Carlsbad Detention Center. [Doc. 1 ¶ 7] Defendants Sergeant Edwardo Duarte, Officer David DeSantiago, and Lieutenant Jessie Rodriguez are law enforcement officers employed by the City of Carlsbad. [Doc. 1 ¶ 5] The City of Carlsbad, New Mexico, also a Defendant, operates the Carlsbad Police Department. [Doc. 1 ¶ 4] Decedent died from gun shots fired by Sergeant Duarte and Officer DeSantiago in the course of his attempt to escape from custody, and Plaintiff's *Complaint for Wrongful Death* ensued. [Doc. 1]

In the *Complaint*, Plaintiff advances four claims for relief. In Count I, "Use of Excessive Force Under § 1983," Plaintiff alleges that Sergeant Duarte and Officer DeSantiago used unreasonable and excessive force against Decedent in violation of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution. [Doc. 1 ¶¶ 22-24] In Count II, "Excessive Use of Force Under State Law," Plaintiff alleges that Sergeant Duarte and Officer DeSantiago violated Decedents' rights under the New Mexico Constitution by using excessive force against him, and that they, along with Lieutenant Rodriguez were negligent in their actions prior to the shooting. [Doc. 1 ¶¶ 25-28] In Count III, a "Substantive Due Process" claim, Plaintiff alleges that "Defendants" violated Decedent's Fourteenth Amendment Right to substantive due process by engaging in conduct that is "shocking to the conscience." [Doc. 1 ¶¶ 29-30] And in Count IV, "Deliberate Indifference in Hiring, Training and Supervision and Ratification

of Unconstitutional Conduct," Plaintiff alleges that the City's policies underlay the allegedly wrongful conduct of its officers, giving rise to municipal liability. [Doc. 1 ¶¶ 31-34]

In their *Motion to Dismiss and/or for Summary Judgment and for Qualified Immunity*, Defendants seek dismissal or summary judgment as to each of Plaintiff's claims. [Doc. 41] The grounds for this *Motion* are discussed in detail later in this Opinion. First, however, the Court will address Defendants' *Motion to Strike Exhibits*. [Doc. 52]

**Defendants'** *Motion to Strike Exhibits*

Rule 56(c)(4) governs the use of affidavits in support of, or in opposition to, motions for summary judgment. It provides that, "[a]n affidavit . . . used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Questions regarding the admissibility of affidavits are determined by reference to the Federal Rules of Evidence. 10B Charles Alan Wright *et al.*, Federal Practice and Procedure § 2738 (4th ed. 2016). To the extent that an affidavit contains inadmissible "conclusory facts . . . [and] statements made on belief or on information and belief," the Court disregards such aspects of the affidavit in considering a motion for summary judgment. *Id.* Thus, the party seeking to strike an affidavit should specify the objectionable portions thereof and state the grounds for the objection. *Id.*

Defendants move, pursuant to Federal Rule of Civil Procedure 56(c), to strike two exhibits "in their entirety": Exhibit 1, the affidavit and report of Plaintiff's expert, Ron

Martinelli, Ph.D; and Exhibit 2 the affidavit of Lyrissa Goeke. [Doc. 52 p. 2]

Defendants argue that Dr. Martinelli's affidavit and report contains hearsay and inadmissible expert opinions.[1] [Id.] They argue that Ms. Goeke's affidavit contains hearsay and incompetent layperson opinion that is speculative and not based upon personal knowledge. [Id.]

According to his affidavit, Dr. Martinelli is a "forensic consultant in Temecula, California." [Doc. 43-2 p. 1] In substantive part, Dr. Martinelli's affidavit reads as follows:

> I have read the motion for Summary Judgment filed by Defendants in this cause along with their affidavits, and I believe the best way to respond thereto, and to offer this Court my opinion is to attach a copy of my report sent to [Plaintiff's counsel] . . . as a part of this affidavit.
>
> I understand that the matters and facts contained therein along with my opinions are under oath as though fully set forth in this Affidavit.

[Doc. 43-2 p. 1-2] The attached "report" includes a section titled "Details of Incident" and another section titled "Analysis of Incident" in which Dr. Martinelli provides, among other things, a narrative of the events underlying this lawsuit derived from his review of

---

[1] Defendants also argue that, in violation of Rule 56(c)(1)(A), Plaintiff fails to point to a specific part of the affidavit or report (which comprises 20 pages of material) to show genuine issues of material fact, and instead contains only general references—for example, by stating that Dr. Martinelli's affidavit "sets forth the obvious factual questions in this case." [Doc. 52 p. 3 (citing Doc. 43 p. 4)] *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, [or] affidavits" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). And they argue further that the Court should disregard Dr. Martinelli's conclusory opinions. [Doc. 52 p. 5-7] These arguments are examined, as necessary, in the Court's analysis of Defendants' *Motion for Summary Judgment*.

relevant documents, including, among other things, police and medical reports. [Doc. 43-2] The narrative portions of Dr. Martinelli's report, which are not based on personal knowledge, and which constitute inadmissible hearsay to the extent that they are offered to illustrate the truth of the underlying circumstances, shall be disregarded by the Court in its consideration of Defendants' *Motion for Summary Judgment*. *See* Fed. R. Evid. 801(c) ("Hearsay means a statement that . . . the declarant does not make while testify at the current trial or hearing"; and is offered "in evidence to prove the truth of the matter asserted in the statement."); Fed. R. Evid. 802 (providing that, subject to specific exceptions, hearsay is not admissible).

Ms. Goeke is a resident of Carlsbad, New Mexico who met Officer DeSantiago when he responded to her call for police to help her with her son who was "causing some problems for" her and "becoming unmanageable." [Doc. 43-1 p. 1] Ms. Goeke's avers that she "distinctly remember[s]" Officer DeSantiago telling her son that "he should not be causing any trouble, or getting into trouble with the police, and he said[,] 'Because I had to kill a guy who was running from me about two months ago.'" [Id.] Ms. Goeke's affidavit continues, "I remember that phrase very distinctly because of him talking about killing a man, and I was aware of the fact that there had been a shooting of a person by the police in Carlsbad approximately two months before." [Doc. 43-1 p. 1-2]

Plaintiff argues Ms. Goeke's affidavit "creates a question of fact as to what [Officer DeSantiago's] state of mind and motive was at the time of the shooting." [Doc. 53 p. 2] Generously assuming that Ms. Goeke's affidavit could reasonably be construed as relevant evidence of Officer DeSantiago's state of mind and motive at the time that

5

Decedent was shot, the Federal Rules of Evidence bar its admission for that purpose. Officer DeSantiago's statement to Ms. Goeke's son plainly falls within the definition of hearsay provided in Rule 801(c) of the Federal Rules of Evidence. While Federal Rule of Evidence 803(3) excepts from the rule against hearsay "[a] statement of the declarant's then-existing state of mind (such as motive . . .)," the exception does not include "a statement of memory . . . to prove the fact remembered[.]" Fed. R. Evid. 803(3). Officer DeSantiago's statement, recalling a past event, was a "statement of memory" that does not fall within the exception provided by Rule 803(3). *See United States v. Rodriguez-Pando*, 841 F.2d 1014, 1019 (10th Cir. 1988) (reasoning that the "state of mind exception" codified in Rule 803(3) rests upon the principle that "there are circumstantial guarantees of trustworthiness attendant to a statement that reflects a then existing mental . . . condition . . . . because the declarant has no chance to reflect upon . . . his situation"; and holding accordingly, that a defendant's post-arrest statement to an officer was not admissible to show his state of mind at the time of the arrest). Accordingly, Ms. Goeke's affidavit, insofar as it pertains to Officer DeSantiago's statement to her son, constitutes inadmissible hearsay and it shall be excluded from the Court's consideration of this matter. *See* Fed. R. Civ. P. 56(c)(4) (providing that an affidavit used oppose a motion for summary judgment must set out facts that would be admissible in evidence).

In summary, Defendants' *Motion to Strike* shall be granted insofar as it pertains to Ms. Goeke's affidavit in its entirety, and to the portions of Dr. Martinelli's report that constitute a narrative of the events underlying this lawsuit offered for the truth of the matter.

**Defendants'** *Motion to Dismiss and/or for Summary Judgment and for Qualified Immunity*

**Overview of the Law of Qualified Immunity**

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability[.]" *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004) (citation omitted). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tenorio v. Pitzer*, 802 F.3d 1160, 1163 (10th Cir. 2015).

When a defendant asserts qualified immunity, "[t]he plaintiff bears the burden of establishing both (1) that the defendant violated a constitutional right and (2) that the right [was] clearly established by the time of the violation." *Id.* at 1164.

**Defendants'** *Motion to Dismiss*

Defendants seek dismissal of Plaintiff's claims against Lieutenant Rodriguez on the ground that Plaintiff has failed to state a plausible claim against him. *See* Fed. R. Civ. P. 12(b)(6) (permitting a motion for "failure to state a claim upon which relief can be granted"). [Doc. 41 p. 7-8] Defendants argue that "although Plaintiff has sued Lt. Rodriguez in his individual capacity, Plaintiff has failed to allege facts sufficient to demonstrate a violation of [Decedent's] constitutional rights." [Doc. 41 p. 7] Further, Defendants argue, Plaintiff failed to state an actionable claim under New Mexico state law. [Doc. 41 p. 8]

In determining whether a claim can survive a motion to dismiss under Rule 12(b)(6) the Court considers whether the plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court accepts, as true, factual allegations in a complaint, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (alteration omitted). Where, as here, a defendant raises a qualified immunity defense, "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

In regard to Lieutenant Rodriguez, Plaintiff alleges the following facts which, as the Court considers Defendants' *Motion to Dismiss*, are assumed true. Lieutenant Rodriguez was among the officers who responded to a report that Decedent had escaped from custody in a stolen minivan. [Doc. 1 ¶¶ 7-11] Lieutenant Rodriguez, along with his fellow officers, found Defendant in the minivan in a driveway. [Doc. 1 ¶ 12] Lieutenant Rodriguez, along with his fellow officers, got out of their respective police vehicles and told Decedent to "stop his van." [Doc. 1 ¶ 11] Although the minivan was in the driveway, off the street, neither Lieutenant Rodriguez, nor his fellow officers pulled a

police vehicle into a "blocking position behind the van, even though they all knew he was attempting to escape, thus allowing [Decedent] to evade capture again." [Doc. 1 ¶ 12]

Incorporating the foregoing factual allegations, Plaintiff claims, in Count II of the *Complaint* ("Excessive Use of Force Under State Law"), that Lieutenant Rodriguez was negligent. [Doc. 1 ¶ 28] And, in Count III of the *Complaint* ("Substantive Due Process"), Plaintiff includes Lieutenant Rodriguez by a general reference to "Defendants" in her claim that Defendants' conduct which was "shocking to the conscience," violated Decedent's Fourteenth Amendment right to due process. [Doc. 1 ¶ 30] Dismissal is warranted as to both of these claims.

As to Plaintiff's state law claim, New Mexico's public employees, including law enforcement officers are broadly immune from liability for torts that they commit while acting within the scope of their duties. NMSA 1978, Section 41-4-4(A) (2001). While certain exceptions apply, negligence is not among the exceptions unless it results in one of the enumerated torts or in the deprivation of a constitutional or statutory right. *See* NMSA 1978, Section 41-4-12 (1977) (enumerating the torts and deprivations for which law enforcement officers acting within the scope of their duties are not immune); *Caillouette v. Hercules, Inc.*, 827 P.2d 1306, 1311 (N.M. Ct. App. 1992) ("[T]he negligence complained of must cause a specified tort or violation of rights; immunity is not waived for negligence standing alone."). While Plaintiff alleges that Lieutenant Rodriguez was negligent by not using his police vehicle to block Decedent's stolen minivan from leaving the driveway, she does not allege that this negligence *caused* Decedent to be deprived of a constitutional or statutory right. Thus, even assuming that

9

Lieutenant Rodriguez was negligent, his negligence does not give rise to liability under New Mexico state law.  Accordingly, Count II shall be dismissed as to Lieutenant Rodriquez.

Neither can Plaintiff's due process claim against Lieutenant Rodriguez survive.  Plaintiff does not allege that Lieutenant Rodriguez used *any* force against Decedent, let alone excessive force; and negligence does not give rise to a Fourteenth Amendment due process claim.  *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("[T]he Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official[,]" therefore, "where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required.").  As such, Count III, insofar as it pertains to Lieutenant Rodriguez, shall be dismissed.

**Defendants'** *Motion for Summary Judgment*

**Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure allows summary judgment when the evidence submitted by the parties establishes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  An issue is "genuine" when the evidence before the Court is such that a reasonable jury could return a verdict in favor of the nonmovant as to that issue.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-52 (1986).  A fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  *Id.* at 248.  Judgment is appropriate as a matter of law if the nonmovant has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

It is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). Rather, the Court assumes the admissible evidence of the nonmovant to be true, resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *Hunt v. Cromartie*, 526 U.S. 541, 551-52 (1999).

**Undisputed Material Facts**

The following facts are undisputed. Decedent was a detainee in the Eddy County Detention Center, awaiting trial on multiple criminal charges, including aggravated battery, larceny, residential burglary, and burglary of a vehicle. [Doc. 41 ¶ A; Doc. 41-1 ¶¶ 3; Doc. 41-2; Doc. 41-3] Officer Jose Martinez transported Decedent to the office of Dr. Marshall Baca, an orthopedist in Carlsbad, for a medical appointment. [Doc. 41 ¶ B; Doc. 41-1 ¶¶ 4-5] After Decedent's medical appointment, Officer Martinez was attending to some paperwork when Decedent, who was handcuffed and wearing a belly chain and leg shackles, "bolted" out of the backdoor of the doctor's office, escaping custody. [Doc. 41 ¶ D; Doc. 41-1 ¶¶ 5-7] Officer Martinez chased Decedent, but before could catch him, Decedent stole a minivan that had been parked with its keys in the ignition, and drove away. [Doc. 41 ¶ E; Doc. 41-1 ¶¶ 8-9] As Decedent began to drive away, Officer Martinez opened the passenger side door and attempted to grab Decedent,

but Decedent accelerated, dragging Officer Martinez, who was holding onto the minivan, into the street. [Doc. 41 ¶ D; Doc. 41-1 ¶¶ 10-11]

Sergeant Duarte, Officer DeSantiago, and Lieutenant Rodriguez responded to a dispatch call regarding Decedent's escape. [Doc. 41 ¶ F; Doc. 41-4 (¶ 3); Doc. 41-5 (¶ 3)] Sergeant Duarte and Officer DeSantiago were aware that Decedent had a reputation for being violent or dangerous. [Doc. 41-4 ¶ 4; Doc. 41-5 ¶ 4] Sergeant Duarte was the first to locate Decedent, who had parked the minivan at a residence and was walking toward it when Sergeant Duarte noticed him. [Doc. 41-4 ¶ 6] Responding to a call from dispatch, Lieutenant Rodriguez also arrived at the residence. [Doc. 41-4 ¶ 7] Sergeant Duarte and Lieutenant Rodriguez both got out of their police vehicles and commanded Decedent to stop. [Doc. 41-4 ¶ 8] When Decedent ignored the commands, Lieutenant Rodriguez used his taser on Decedent, but Decedent nevertheless got back into the minivan and drove away. [Doc. 41-4 ¶ 9] Lieutenant Rodriguez and Sergeant Duarte, in their respective police vehicles, began pursuing Decedent in the minivan. [Doc. 41-4 ¶ 10]

Officer DeSantiago spotted Decedent travelling north on Fifth Street against oncoming traffic. [Doc. 41-5 ¶¶ 5-6] Officer DeSantiago and Sergeant Duarte (it is unclear from the record where Lieutenant Rodriguez was at this time), pursued the minivan. [Doc. 41-5 ¶¶ 6-7] Decedent drove the minivan into an alley and Officer DeSantiago and Sergeant Duarte drove up behind it. [Doc. 41-4 ¶ 14] The alley was in a residential neighborhood and as Decedent drove down the alley, he crashed the minivan through a fence into an enclosed back yard. [Doc. 41-5 ¶ 9; Doc. 41-4 ¶¶ 14-15] Officer

DeSantiago and Sergeant Duarte got out of their police vehicles and pursued the minivan into the backyard, commanding Decedent to stop and to get out of the vehicle. [Doc. 41-4 ¶ 19-20; Doc. 41-5 ¶¶ 12-13] Instead of doing so, Decedent accelerated in the minivan travelling toward the officers, at which time both officers opened fire upon the minivan. [Doc. 41-4 ¶ 20; Doc. 41-5 ¶ 14] As this scenario unfolded, and before they opened fire, both officers feared for their lives, their safety, and the safety of the public. [Doc. 41-4 ¶ 21; Doc. 41-5 ¶ 15] Decedent later died from gunshot injuries. [Doc. 1 ¶ 32; Doc. 41 ¶ R; Doc. 41-4 ¶ 22]

**Analysis**

In Count I and in Count III of the *Complaint*, Plaintiff relies on a theory Section 1983 liability for Officer DeSantiago's and Sergeant Duarte's alleged excessive use of force in violation of Decedent's rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution. [Doc. 1 ¶¶ 22-24, 29-30] Neither the Fourth nor the Eighth Amendment applies here. *See Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010) ("[N]either the Fourth nor Eighth Amendment applies [to a claim of excessive force] when the plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment[.]"). Instead, Plaintiff's claims are governed by the Fourteenth Amendment, which prohibits a state actor from inflicting punishment prior to an adjudication of guilt in accordance with due process of law. *Id.* (holding that an excessive force claim brought by a pre-trial detainee against state officials triggers the Fourteenth Amendment's due process clause); *see Berry v. City of Muskogee, Okla*, 900 F.2d 1489, 1493 (10th Cir. 1990) (recognizing that

both the Fifth and the Fourteenth Amendments "prohibit punishment prior to an adjudication of guilt in accordance with due process of law"; and when it is the *state* that seeks to impose such punishment, "the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment").

To succeed in a Section 1983 claim based on an alleged violation of a pretrial detainee's Fourteenth Amendment right to be free from excessive force, a Plaintiff "must show . . . that the force purposely or knowingly used against [the pretrial detainee] was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (holding that courts must use an objective standard, not a subjective standard, in determining whether the force used was, constitutionally speaking, "excessive"). The quality of "objective reasonableness turns on the facts and circumstances of each particular case." *Id.* "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* Among the considerations that may inform this analysis are "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 2473.

Defendants' statement of undisputed material facts demonstrates that the officers' use of force was objectively reasonable under the circumstances. The officers on the scene - particularly Sergeant Duarte and Lieutenant Rodriguez - ultimately used deadly force against Decedent knowing that Decedent had (1) escaped from Officer Martinez,

14

whom he dragged alongside the stolen minivan, showing no regard for the inherent danger of this maneuver to Officer Martinez; (2) disobeyed Lieutenant Rodriguez's and Sergeant Duarte's commands to stop in the driveway of the residence at which the officers first encountered him; (3) withstood, and was undeterred by, Lieutenant Rodriguez's use of a taser; (4) drove away from the residence with the officers in pursuit; (5) driven the stolen minivan against traffic, refusing to stop notwithstanding the fact that he was being pursued by the police; (6) crashed the minivan through a fence and into the backyard of a private residence showing no regard for the safety of prospective occupants of the yard; (7) ignored Officer DeSantiago's and Sergeant Duarte's commands, once in the backyard, to stop and to get out of the van; and (7) accelerated the van toward the officers. Applying the factors enumerated in *Kingsley*, the officers made numerous attempts to avoid the use of force (by issuing verbal commands), and attempted to effect the recapture of Decedent by using lesser force (the taser) to apprehend Decedent, to no avail. *Kingsley*, 135 S. Ct. at 2473 (explaining that the pretrial detainee's active resistance and the officer's attempt to temper or limit their use of force should be considered in an objective reasonableness analysis). Decedent's actions, beginning with his act of dragging Officer Martinez alongside the stolen minivan, continuing as he drove the minivan against traffic notwithstanding police pursuit, crashing into the backyard of a private residence, and finally accelerating toward the officers in the minivan presented an obvious and continuing danger to the public and to the officers. *See id.* (urging courts to consider the threat reasonably perceived by the officer). Thus, while the officers used deadly force against Decedent, it was not objectively unreasonable for them to do so. *See*

15

*id.* (stating that courts should consider the relationship between the need for the use of force and the amount of force used); *see Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (holding, in the context of a fourth amendment claim, that ("[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force"); *Thomas v. Durastanti*, 607 F.3d 655, 671 (10th Cir. 2010) ("[C]ourts have little difficulty in concluding that an officer's reasonable perception that a vehicle may be used as a weapon may allow for the use of deadly force."); *McCullough v. Antolini,* 559 F.3d 1201, 1207 (11th Cir.2009) ("We have ... consistently upheld an officer's use of force and granted qualified immunity in cases where the decedent used or threatened to use his car as a weapon to endanger officers or civilians immediately preceding the officer's use of deadly force.").

Plaintiff's attempt to create a genuine issue as to the constitutionality of the use of force in this case is unavailing. As an initial matter, the Court observes that the videos (which were not filed referenced as exhibits, and are referenced generally in Plaintiff's *Response* as "video" and delineated as "No. 1" and "No. 2") do not create a genuine issue of fact because they do not contradict the version of events set forth in the officers' affidavits. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (stating that a court "should . . . view[] the facts in the light depicted by the videotape"). Furthermore, Plaintiff's two non-specific references to Dr. Martinelli's affidavit, one to support Plaintiff's assertion that the affidavit "sets forth the obvious factual questions in this case[,]" and the other to support the assertion that Decedent "posed no threat the officers . . . [or] to the public

because he could not have escaped after coming out of the yard even if he had not been shot[,]" do not comply with Rule 56(c)(1)(A). [Doc. 43 p. 4, 6-7] *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to *particular parts* of materials in the record[.]" (Emphasis added). Insofar as Plaintiff has failed to point to a particular portion of Dr. Martinelli's affidavit that she believes supports her contentions and is admissible, the Court will not do so on her behalf.

In sum, the undisputed material facts provided by Defendants demonstrate that the officers' use of force was not objectively unreasonable under the circumstances. Plaintiff has not demonstrated that there exists a genuine issue of material fact as to the question of reasonableness and, by extension, has failed to demonstrate the existence of a factual dispute regarding the constitutionality of the officers' use of force. Accordingly, Defendants are entitled to summary judgment on Plaintiff's Section 1983 claims, and Defendants' *Motion for Summary Judgement* as to Count I and Count III shall be granted. *See Tenorio*, 802 F.3d at 1164 (stating that to overcome an assertion of qualified immunity, the plaintiff must establish that the defendant violated a constitutional right); *Celotex Corp.*, 477 U.S. at 322-23 (holding that judgment is appropriate as a matter of law if the nonmovant has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial).

In Count II of the *Complaint*, brought pursuant to the New Mexico Tort Claims Act, Plaintiff reiterates her excessive force claim against Officer DeSantiago and Sergeant Duarte, framing it as a violation of Decedent's rights under the New Mexico

Constitution, Article II, Sections 10 and 18. *See* N.M. Const. art. II, § 10 (guaranteeing freedom from unreasonable searches and seizures); N.M. Const. art. II, § 18 (providing, in relevant part, that "[n]o person shall be deprived of life . . . without due process of law"). In interpreting provisions of the New Mexico Constitution that parallel those of the United States Constitution, New Mexico courts are guided by federal jurisprudence. *See e.g., State v. Ellis*, 186 P.3d 245, 251 (N.M. 2008) ("We are . . . informed by federal jurisprudence regarding the Fourth Amendment's protections against unreasonable searches and seizures, including the protection against excessive force" in the course of an arrest); *State v. Smallwood*, 608 P.2d 537, 540-41 (N.M. Ct. App. 1980) (relying on federal case law to conclude that pre-trial detainees' claims of cruel and unusual punishment are governed by the due process clause of the New Mexico Constitution instead of the constitutional ban on cruel and unusual punishment of convicted prisoners). Accordingly, Defendants submit, and Plaintiff does not refute, that Plaintiff's excessive force claim is governed by the due process clause of the New Mexico Constitution. [Doc. 41 p. 14-15] Further, Plaintiff concedes that the analysis of her state law excessive force claim mirrors that of her federal law excessive force claim. [Doc. 43 p. 11] Having concluded that Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment-based excessive force claim, and in light of the parties' agreement that the same analysis governs her state law excessive force claim, the Court incorporates the relies upon its analysis of Plaintiff's federal excessive force claim to conclude that Defendants are entitled to summary judgment as to Count II.[2]

---

[2] To the extent that Count II of the Complaint may be construed as including a claim of

In Count IV of the *Complaint*, Plaintiff claims that the City of Carlsbad is liable for the allegedly unconstitutional actions taken by its officers. [Doc. 1 ¶¶ 31-34] Because Plaintiff's Constitutional claims against the officers are not viable, Plaintiff may not proceed under a theory of municipal liability. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."). Accordingly, Count IV shall be dismissed.

**CONCLUSION**

  **WHEREFORE, IT IS ORDERED THAT:**

*Defendants' Motion to Strike Exhibits Attached to Plaintiff's Response to Defendants' Motion for Summary Judgment and Memorandum of Law in Support Therefor*[], filed on December 2, 2016 [Doc. 52] is hereby **GRANTED in PART and DENIED in PART** as set forth above; and

*Defendants' Motion to Dismiss and/or for Summary Judgment and for Qualified Immunity and Memorandum of Law in Support Therefor*[], filed on September 6, 2016, [Doc. 41] is hereby **GRANTED**.

  **SO ORERED this 19th day of September, 2017, in Albuquerque, New Mexico.**

                _____
                **M. CHRISTINA ARMIJO**
                **Chief United States District Judge**

---

negligence, independent of the excessive force claim, such claim is not viable and must be dismissed. *See Caillouette*, 827 P.2d at 1311 ("[T]he negligence complained of must cause a specified tort or violation of rights; immunity is not waived for negligence standing alone.").